IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD CORBIN, | : | Civil No. 3:17-cv-334 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| J. BALTAZAR, | : | |
| Respondent | : | |

## **MEMORANDUM**

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Richard Corbin ("Corbin"), an inmate confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). Corbin contends that his due process rights were violated in the context of a prison disciplinary hearing. For the reasons set forth below, the Court will deny the habeas petition.

### I. **Background**

On June 21, 2011, Corbin was sentenced in the United States District Court for the Eastern District of Pennsylvania to a total term of imprisonment of 107 years for conspiracy to commit robbery, robbery, robbery with intent to distribute a controlled substance, and using and carrying a firearm during a crime of violence. (Doc. 6-1, pp. 6-15, Public Information Inmate Data). His projected release date is May 1, 2105, via good conduct time release. (*Id.* at p. 6).

In the instant petition, Corbin challenges disciplinary proceedings that were held at USP-Canaan in which he was found guilty of violating code 113, possession of any narcotics, drugs, and related paraphernalia. (Doc. 1). Corbin claims that his due process rights were violated because the Discipline Hearing Officer ("DHO") did not prove that Corbin had knowledge of and control over the contraband found under his cellmate's mattress, and prison staff failed to send the contraband to a laboratory for confirmation testing. (*Id.*). For relief, Corbin seeks expungement of the incident report, reinstatement of his restrictive privileges, reimbursement of his grade one pay from June 1, 2016 to the present date, and removal from the Inmate Financial Responsibility Program. (*Id.* at p. 8).

## II. <u>Discussion</u>

Respondent argues that the petition should be denied because Corbin was afforded all of his procedural rights, and "some evidence" supports the finding of the disciplinary hearing officer regarding incident report number 2852842. (Doc. 6, pp.8-13).

On May 19, 2016, Corbin was charged in incident report number 2852842 with a code 113 violation for possession of any narcotics, drugs, and related paraphernalia. (Doc. 6-1, pp. 22-23, Incident Report). The incident report describes the incident as follows:

> On 5/19/16 at approximately 7:30 PM I was conducting a random cell search of inmate Corbin, Richard # 47549-066 in cell 132 of B-1. While I was conducting the search of inmate Corbin, Richard # 47549-066 cell I came across two strips of paper that are commonly used with K2 spice. The items were located under the mattress of inmate Hawkins, Darryl # 48271-066 wrapped in a seasoning packet. At this time I had the items sent to the

2

> Lieutenant[']s office for testing. I was notified by SIS Lieutenant W. Vizcaino, that the small paper squares were tested with NIK tests A&U, which resulted in positive results for Amphetamines.

(Doc. 6-1, p. 22).

On May 19, 2016, the investigating lieutenant gave Corbin advanced written notice of the charge against him. (*Id.* at ¶¶ 14-16). During the investigation, Corbin was advised of his right to remain silent, and made the following statement, "That is not mine." (*Id.* at ¶¶ 23, 24). Corbin did not request to call any witnesses. (*Id.* at ¶ 25). At the conclusion of the investigation, the lieutenant determined that the charge of a code 113 violation was valid and warranted, and he referred the incident report to the Unit Discipline Committee ("UDC") for further disposition. (*Id.* at ¶¶ 26, 27).

On May 20, 2016, Corbin appeared before the UDC. (*Id.* at ¶¶ 17-21). Corbin stated, "Whatever that was under his mattress is his." (*Id.* at ¶ 17). After the hearing, the UDC referred the charge to the DHO due to the seriousness of the charge, and recommended the loss of good time credits if Corbin was found guilty. (*Id.* at ¶¶ 19, 20).

On May 20, 2016, a staff member provided Corbin with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-1, pp. 25-27). Corbin did not sign for his copies of the forms. (*Id.*). Corbin did not elect to have a staff representative, and did not elect to call any witnesses at the hearing. (*Id.* at p. 25).

Prior to the hearing, the DHO returned the incident report to the correctional officer to be rewritten because the original was not signed and did not indicate whether the other inmate involved was an occupant of the cell. (*See* Doc. 6-1, p. 35). On May 24, 2016, the revised incident report was delivered to Corbin. (Doc. 6-1, p. 28). The investigating officer advised Corbin of his right to remain silent, which Corbin verbally acknowledged. (Doc. 6-1, p. 29, ¶ 23). Corbin was again offered the opportunity to make a statement and he responded, "[H]ow can these drugs found be mine if they were found under my cellies mattress?" (*Id.* at ¶ 24).

On May 25, 2016, Corbin again appeared before the UDC and made no comment regarding the charge. (Doc. 6-1, p. 28, ¶ 17). The UDC referred the incident report to the DHO based on the severity of the offense, and recommended the loss of various privileges. (*Id.* at ¶¶ 19, 20).

On May 20, 2016, a staff member again provided Corbin with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-1, pp. 30-32). Corbin did not sign for his copies of the forms. (*Id.*). Corbin was again advised of his rights and he requested a staff representative, but did not request any witnesses. (*Id.* at p. 30).

On June 1, 2016, Corbin appeared for a hearing before DHO Marc A. Renda. (Doc. 6-1, pp. 33-37, DHO Report). During the June 1, 2016 DHO hearing, the DHO confirmed

4

that Corbin received advanced written notice of the charge on May 24, 2016, and that he had been advised of his rights before the DHO on May 25, 2016. (*Id.* at p. 33). The DHO again advised Corbin of his rights, and Corbin indicated that he understood them. (*Id.*). Corbin waived his right to a staff representative and did not request to call any witnesses. (*Id.*). Corbin made the following statement regarding the charge:

> Me and my cellie have an understanding. If it's in my locker, it's mine. If it's under my bed it's mine. I don't know nothing about it. He's in a wheelchair. I don't touch his stuff. He don't touch my stuff.

(*Id.*).

Based on the evidence presented at the hearing, the DHO found that Corbin committed the prohibited act as charged. (*Id.* at p. 16). The DHO relied on the documentary evidence including the incident report and investigation, the May 19, 2016 memorandum from the SIS Lieutenant regarding positive test result of items confiscated from Corbin's cell, four photographs depicting two small strips of paper, and the NIK test Kit A&U. (*Id.* at p. 34-36). The DHO afforded little weight to Corbin's statement, finding that "[a]ll inmates are responsible for all property and contraband in their possession, dominion, and that of which they exercise control." (*Id.* at p. 36). The DHO found that the pieces of paper were found in an area over which Corbin exercised daily accessibility. (*Id.*).

After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Corbin committed the prohibited act of possession of any

narcotics, drugs, or related paraphernalia. (*Id.*). As such, the DHO sanctioned him with disallowance of 40 days of good conduct time, disciplinary segregation for 60 days, loss of commissary, telephone, and TRULINCS privileges for one year, impound property for two months (excluding religious and legal material), forfeiture of 50 days of non-vested good conduct time, loss of visiting restriction for one year, and loss of visiting privileges for one year. (*Id.* at p. 36). Corbin was advised of his appeal rights at the conclusion of the hearing. (*Id.* at p. 37).

Corbin's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.*

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to

call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the

day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the matter *sub judice*, it is clear that Corbin was afforded all of the required procedural rights set forth in *Wolff*. He received the amended incident report on May 24, 2016. Corbin was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Corbin declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position. At the conclusion of the hearing, Corbin received a written decision setting forth

the evidence relied upon by the DHO and the rationale behind the decision. Corbin was also notified of his right to appeal.

Since Corbin was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of some evidence to allow the DHO to conclude that Corbin was guilty of the charge. The DHO relied on the incident report, the May 19,2016 memorandum from the Lieutenant regarding positive test result of items confiscated from Corbin's cell, four photographs depicting two small strips of paper, and the NIK test Kit A&U. Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Corbin, except a self-serving statement denying the charge, the Court finds that Corbin's due process rights were not violated by the determination of the DHO. (Doc. 6-1 at 9). See, e.g., Denny v. Shultz, 708 F.3d 140, 145 (3d Cir. 2013) (finding that, under a theory of constructive possession, courts have "uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits").

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, et seq. Corbin was found guilty of a 100-level, greatest severity level prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for

100-level offenses:

    A.    Recommend parole date rescission or retardation.
    B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
    B.1.    Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
    C.    Disciplinary segregation (up to 12 months).
    D.    Make monetary restitution.
    E.    Monetary fine.
    F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
    G.    Change housing (quarters).
    H.    Remove from program and/or group activity.
    I.    Loss of job.
    J.    Impound inmate's personal property.
    K.    Confiscate contraband.
    L.    Restrict to quarters.
    M.    Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Accordingly, the petition will be denied as to incident report number 2852842.

### III. **Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order shall issue.

Date: April 24, 2019

Robert D. Mariani
United States District Judge